# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1816
_____

A. D. Smith, et al.

*Plaintiffs - Appellants*

v.

Board of Education of the Palestine-Wheatley School District, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 16, 2014
Filed: October 2, 2014

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 1987, the majority white Palestine school district and the majority African-American Wheatley school district, both located in St. Francis County, Arkansas, voluntarily consolidated into the Palestine-Wheatley School District (the "District"), while continuing to operate elementary and secondary schools in both communities. In 1989, Wheatley schoolchildren, their parents, and other interested parties (the "Wheatley plaintiffs") sued the District, alleging on-going violations of the Voting

Rights Act and the Fourteenth Amendment. In May 1990, the district court confirmed a settlement between the parties and approved a consent decree to enforce the settlement "in accordance with its terms." A central provision required that the District operate a single middle school located in the town of Wheatley.

In 2012, the District filed a motion to modify or terminate the decree, seeking an order permitting the District to relocate the middle school grades from the Wheatley campus to the Palestine campus. Primarily applying the standards for modifying a consent decree when changed circumstances have caused it to be unjust, see Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 384-85 (1992), the district court[1] granted the motion. The Wheatley plaintiffs appeal, arguing the district court erred when it failed to apply the more rigorous test for termination of a desegregation decree set forth in Freeman v. Pitts, 503 U.S. 467, 490-91 (1992). Reviewing what is the appropriate legal standard *de novo*, and the district court's modification of the decree for abuse of discretion, we affirm. See Parton v. White, 203 F.3d 552, 555-56 (8th Cir.), cert. denied sub nom. Cooper v. White, 531 U.S. 963 (2000).

**I.**

In their 1989 Complaint, the Wheatley plaintiffs alleged that the consolidated districts "have a history of unremediated racial discrimination" and "have not fully desegregated their staffs and student activities"; that defendants planned to close the secondary school in Wheatley and transport its majority African-American students to the Palestine school so that "the predominantly white population from Palestine [would not] be burdened in the desegregation-consolidation process"; and that the at-large election of the District's directors "dilutes the votes of black plaintiffs" in

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

violation of the Voting Rights Act.  Plaintiffs sought an order requiring election of school board members from eight single-member districts, enjoining "implementation of any desegregated or consolidated plan which disparately burdens . . . students who live in Wheatley," and "forbidding the closing of the Wheatley High School . . . unless justified by objective, nonracial considerations."  Defendants denied the allegations of discrimination but admitted they planned to close the Wheatley High School and transport grades 7-12 to the Palestine campus.  In November 1989, the court ordered the parties to mediate the dispute with assistance from the United States Department of Justice Community Relations Service.  The result was a settlement that the court approved as a consent decree in May 1990.[2]  The decree provided:

> 1.  That the School District move the entire grades of 5, 6, 7 and 8 to the Wheatley campus.
> 2.  That monthly School Board meetings be alternated between the two school campuses in Palestine and Wheatley.
> 3.  That the School District establish an organized sports program for grades 6 and 7.
> 4.  That all stationery and all printed material, including printing on school vehicles, have the name "Palestine-Wheatley."
> 5.  That neither faculty at the Palestine campus or the Wheatley campus shall be considered subordinate to the other.
> 6.  That the District shall provide, for students in both Palestine and Wheatley, two free telephones for the purpose of contacting parents.
> 7.  That the District will make efforts to create an educational spirit in both communities, including the establishment of a Palestine-Wheatley Parent Teachers Association.
> 8.  That the election of the new board will be pursuant to single member voting districts and will meet all standards of the Voting Rights

---

[2]The court's order directed counsel to prepare a consent decree incorporating the settlement.  This was never done, but for over twenty years the parties and the court have treated a February 1990 letter proposal by the District's attorney, orally accepted by plaintiffs' attorney, as reflecting the consent decree's terms.

Act and have final approval of the Voting Rights section of the United States Department of Justice (if necessary).

9. That the terms of office shall be three for (3) years, two for (2) years, and two for (1) year. Thereafter, each member shall run for three year terms.

10. That the mascot of the District shall be the "Patriots" and school colors shall be red, white, and blue.

11. That the Superintendent will not participate in any School Board election.

In 1994 and again in 2005, the District petitioned to modify the decree to alter the grades attending the Wheatley campus. The Wheatley plaintiffs did not object, and the court granted those modifications. The District petitioned for permission to relocate all grades from the Wheatley campus to the Palestine campus in 2006, alleging that most students attending the middle school did not reside in Wheatley and transporting students to Wheatley was "an unnecessary and inefficient expense." The Wheatley plaintiffs opposed this modification, which the district court denied after a hearing, concluding the District had "failed in its proof."

In June 2012, the District filed the "Motion to Modify or Terminate Consent Decree" here at issue. The Motion again sought permission to relocate the middle school grades to the Palestine campus, effectively ending the District's educational presence in the town of Wheatley. In support, the District submitted evidence of changed demographic and financial circumstances tending to show that relocating the middle school to Palestine was justified. Applying the standard for modification of a consent decree first announced in Rufo, the district court agreed with the District:

> The Court finds that the evidence establishes that since 1990, when the parties agreed to keep an educational presence in Wheatley, the population of the District has shifted so that the majority of the population lives closer to Palestine. Further, the greater majority of the students, including minority students, live closer to Palestine. The Court further finds the evidence reflects the District's financial situation is

under closer scrutiny due to changes in [state] law. . . . The evidence shows the District has a declining fund balance and is projected to lose students in the coming years. Further, the District's middle school has been cited by the Arkansas Department of Education for academic shortcomings.

* * * * *

The Court finds the Board has established that there have been significant changes in circumstances to warrant modification of the consent decree. The Court further finds the evidence establishes that defendants have complied in good faith with the remainder of the requirements set forth in the consent decree and "that 'the vestiges of past discrimination ha[ve] been eliminated to the extent practicable.'" *Little Rock Sch. Dist. v. Arkansas*, 664 F.3d 738, 744 (8th Cir. 2011) (citation omitted).

The court ordered "that defendants' motion to modify or terminate the consent decree is granted." This appeal followed.

## II.

In Rufo, the Supreme Court confirmed that Rule 60(b) of the Federal Rules of Civil Procedure authorizes modification of consent decrees. The Court reversed the denial of a motion to modify a consent decree entered to correct unconstitutional conditions at a county jail, concluding that the lower courts had applied a too-restrictive standard of review. The Court explained, 502 U.S. at 380-81, 383:

The upsurge in institutional reform litigation since *Brown v. Board of Education*, 347 U.S. 483 (1954), has made the ability of a district court to modify a decree in response to changed circumstances all the more important. Because such decrees often remain in place for extended periods of time, the likelihood of significant changes occurring

-5-

during the life of the decree is increased. . . . [T]he public interest is a particularly significant reason for applying a flexible modification standard in institutional reform litigation because such decrees 'reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions.'

\* \* \* \* \*

Although we hold that a district court should exercise flexibility in considering requests for modification of an institutional reform consent decree, it does not follow that a modification will be warranted in all circumstances. Rule 60(b)(5) provides that a party may obtain relief from a court order when 'it is no longer equitable that the judgment should have prospective application,' not when it is no longer convenient to live with the terms of a consent decree. Accordingly, a party seeking modification [must establish] that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstances.

Less than three months later, the Court decided Freeman, reviewing the denial of a motion for final dismissal of a consent order that imposed "a comprehensive and final plan of desegregation" for the suburban Atlanta school system. The school system sought an order that it "had satisfied its duty to eliminate the dual education system, that is to say a declaration that the school system had achieved unitary status." 503 U.S. at 472-73. Without even citing Rufo, the Court held that:

in the course of supervising desegregation plans, federal courts have the authority to relinquish supervision and control of school districts in incremental stages, before full compliance has been achieved in every area of school operations. . . . Among the factors which must inform the sound discretion of the court in ordering partial withdrawal are the following: whether there has been full and satisfactory compliance with the decree in those aspects of the system where supervision is to be

withdrawn; whether retention of judicial control is necessary or practical to achieve compliance with the decree in other facets of the school system; and whether the school district has demonstrated, to the public and to the parents and students of the once disfavored race, its good-faith commitment to the whole of the court's decree and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance.

Id. at 490-91. In considering the school district's good faith, the court should address "whether the vestiges of past discrimination had been eliminated to the extent practicable." Id. at 492, quoting Board of Educ. v. Dowell, 498 U.S. 237, 250 (1991).

## III.

The Wheatley plaintiffs' argue on appeal that the district court erred by relying on Rufo's standard for modification of a consent decree, when it should have applied the test for termination of a desegregation decree articulated in Freeman. As plaintiffs point out, the primary difference between these standards is that the Rufo test lacks Freeman's explicit focus on the moving party's good faith as to both past and future compliance with the consent decree. Applying the Freeman standard, the Wheatley plaintiffs contend, the District's motion to modify or terminate the consent decree should have been denied because the District failed to prove (i) compliance with the decree's requirement that the District not eliminate "an educational presence in Wheatley," (ii) that the demographic changes allegedly justifying modification were not the result of the District's past segregation, and (iii) that the District had "eliminated the vestiges of its segregated past to the extent practicable."

The Wheatley plaintiffs' contention that Rufo does not apply to school desegregation decrees is without merit. The above-quoted citation to Brown v. Board of Education in the Rufo opinion makes this obvious. Thus, it is no surprise that, nearly twenty years ago, we applied the flexible Rufo standard in affirming a

modification to a long-standing Little Rock school desegregation consent decree that permitted the closing of an incentive school. Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. #1, 56 F.3d 904, 914 (8th Cir. 1995); accord Lorain NAACP v. Lorain Bd. of Educ., 979 F.2d 1141, 1149 (6th Cir. 1992), cert. denied, 509 U.S. 905 (1993).

The Wheatley plaintiffs' proposed legal standard ignores the significant differences between a petition to modify a consent decree on account of changed circumstances, and a petition to terminate all or part of a consent decree because the party subject to the decree has fully complied with its obligations. A court of equity always retains discretion to modify an injunction, including a consent decree, "when changed factual conditions make compliance with the decree substantially more onerous . . . when a decree proves to be unworkable because of unforeseen obstacles . . . or when enforcement would be detrimental to the public interest." Rufo, 502 U.S. at 384. As we said in Gavin v. Branstad, 122 F.3d 1081, 1088 (8th Cir. 1997), "the nature of the remedy to be applied in the future[] is not established in perpetuity upon the approval of the consent decree."

Rufo and its progeny grant federal courts of equity substantial flexibility to adapt their decrees to changes in the facts or law, particularly in institutional reform litigation, where the public interest is paramount. See Horne v. Flores, 557 U.S. 433, 447-48 (2009). Of course, a requested modification "must not create or perpetuate a constitutional violation." Little Rock Sch. Dist., 56 F.3d at 914, quoting Rufo, 502 U.S. at 391. Thus, when modification of a decree is sought because of changed circumstances, the moving party's past compliance with its constitutionally-mandated terms is "obviously relevant." Dowell, 498 U.S. at 249. But proof of full compliance is not a pre-condition to obtaining relief from a consent decree's contractual mandates on account of changed circumstances, as it is when a moving party seeks termination of an injunctive decree because it has fully complied, as in Cody v. Hillard, 139 F.3d

1197, 1199 (8th Cir. 1998). Here, the district court expressly found "that 'the vestiges of past discrimination ha[ve] been eliminated to the extent practicable,'" the core of the termination standard in <u>Freeman</u>, which authorizes courts to relinquish continuing jurisdiction to ensure compliance with a desegregation consent decree when the moving party has demonstrated full compliance.

The Wheatley plaintiffs understood when the consent decree was entered that the relief ordered was not perpetual; their 1989 Complaint sought an injunction forbidding the closing of the Wheatley High School "unless justified by objective, nonracial considerations." Their 1989 lawsuit presumed that the Wheatley and Palestine school districts had consolidated, with support from the Arkansas Department of Education, at least in part to remedy racial imbalances that may have been the result of unconstitutional *de jure* segregation. Such imbalances could have been remedied by reassigning some students, faculty, and administrators to the existing facilities, or by closing the schools in Wheatley, so that all students and teachers would attend one racially integrated campus The lawsuit was settled by the parties agreeing to the former remedy, approved by the court in a consent decree. The remedy ordered was a constitutional option, but it was not a constitutional imperative. Therefore, the District's obligation to maintain certain grades at the Wheatley campus, like the aspects of the Little Rock desegregation plan at issue in <u>Little Rock School District v. North Little Rock School District</u>, "ar[o]se as a matter of contract, not constitutional law." 451 F.3d 528, 531 (8th Cir. 2006). Modifying the decree to close the schools in Wheatley based on changed circumstances does not "resegregate" the District's facilities. This change, by itself, is constitutionally neutral.

**IV.**

The question, then, is whether the district court abused its discretion in applying the <u>Rufo</u> standard when it granted the District's motion to modify or terminate the

consent decree. The <u>Rufo</u> standard has two essential elements, whether "a significant change in circumstances warrants revision of the decree," and if so, "whether the proposed modification is suitably tailored to the changed circumstances." 502 U.S. at 383.

**A.** On appeal, the Wheatley plaintiffs do not argue that the district court erred in concluding the District met its burden to establish the first element, changed circumstances warranting modification of the decree. Rather, they argue that <u>Rufo</u> is not the governing standard and focus on the District's alleged lack of compliance. Thus, we need give this element little consideration, although we reemphasize the Supreme Court's warning that a moving party must establish "a significant change in circumstances," not merely that "it is no longer convenient to live with the terms of a consent decree." Here, the factors noted by the district court -- dramatic demographic changes, significant cost savings, a projected decrease in enrollment, a risk of fiscal distress noted by the Arkansas Department of Education's Fiscal Distress Accountability and Reporting Unit, "academic shortcomings" cited by the Department, and evidence that placing all grade levels on the same campus would likely improve the academic performance of middle school students -- together with the court's finding "that defendants have complied in good faith with the remainder of the requirements set forth in the consent decree," were a sufficient basis for the court to conclude that the District had demonstrated the requisite "significant change of circumstances." The flexible <u>Rufo</u> standard "allows a court to recognize that the longer an injunction or consent decree stays in place, the greater the risk that it will improperly interfere with a State's democratic processes." <u>Horne</u>, 557 U.S. at 453.

**B.** The second <u>Rufo</u> element -- whether the modification is suitably tailored to the changed circumstances -- gives us greater pause. The district court simply granted the District's motion to modify or terminate, without clarifying which it was granting. On appeal, the Wheatley plaintiffs argue the decree was terminated, without proof of

the good faith compliance <u>Freeman</u> required, "because it authorized the ending of any educational presence in Wheatley, and without there being a school in Wheatley, all other aspects of the decree are nugatory." Under <u>Rufo</u>, a court of equity's flexible authority to modify a consent decree on account of changed circumstances includes the authority to relieve the moving party of a consensual commitment that was essential to the original decree. Thus, a court has the power to order a changed-circumstances modification that effectively terminates the decree. <u>Cf.</u> <u>United States v. Swift & Co.</u>, 286 U.S. 106, 114 (1932) (discussing the power "to revoke or modify" a consent decree).

However, the Supreme Court has cautioned, if a consent decree is to be terminated or dissolved, the parties are entitled to "a rather precise statement" to that effect. <u>Dowell</u>, 498 U.S. at 246. Here, the district court's Order is not precise on the question of modification or termination. The record is clear that the District sought permission to transfer the middle school grades from the Wheatley campus to the Palestine campus. The district court did not abuse its discretion in approving that modification, which was directly related to the evidence of changed circumstances the District presented. It is also apparent from the face of the consent decree that many of its eleven contractual commitments were premised on continued use of two school campuses; therefore, these provisions, too, were effectively terminated.

Other provisions in the decree do not require functioning schools in both communities. For example, the provisions relating to school board membership districts, school board terms, and the superintendent's lack of voting authority -- provisions that resolved the Wheatley plaintiffs' distinct Voting Rights Act claims -- do not require an "educational presence" in Wheatley and were not addressed in the District's proof of changed circumstances. On this record, the District's motion to terminate these provisions was supported by nothing more than the notion they are "no longer convenient to live with," which does not warrant Rule 60(b)(5) relief under

Rufo.  In these circumstances, we are confident the district court did not intend that its Order terminate the entire consent decree, and we so construe its Order.

For the foregoing reasons, the Order of the district court dated March 12, 2013, is affirmed.

_____