# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1919

_____

W.T. Davis, Individually and on behalf of a Class of Taxpayers of Garland County, Arkansas, Similarly Situated, and; Garland County Chapter of the N.A.A.C.P.

*Plaintiffs - Appellees*

v.

Hot Springs School District; Arkansas, State of; Arkansas State Board of Education

*Defendants - Appellees*

Earle Love, Individually, and as a Member of the Arkansas State Board of Education; L.D. Harris, Individually, and as a Member of the Arkansas State Board of Education; Jeff Starling, Individually, and as a Member of the Arkansas State Board of Education; Robert L. Newton, Individually, and as a Member of the Arkansas State Board of Education; Dr. Harry P. McDonald, Individually, and as a Member of the Arkansas State Board of Education; Rae-Perry, Individually, and as a Member of the Arkansas State Board of Education; Elaine Scott, Individually, and as a Member of the Arkansas State Board of Education; Walter Turnbow, Individually, and as a Member of the Arkansas State Board of Education; Nancy Wood, Individually, and as a Member of the Arkansas State Board of Education; Garland County Board of Education; Van Smith, Individually, and as a Member of the Garland County Board of Education; Carl L. Johnson, Individually, and as a Member of the Garland County Board of Education; Flora Kimball, Individually, and as a Member of the Garland County Board of Education; Ira Livers, Individually, and as a Member of the Garland County Board of Education; John Wainscott, Individually, and as a Member of the Garland County Board of Education; E.T. Shuffield, Individually, and as a Member of the Garland County Board of Education

*Defendants*

Cutter Morning Star School District; Fountain Lake School District; Jessieville School District; Lake Hamilton School District; Lakeside School District; Mountain Pine School District

*Defendants - Appellants*

———————————

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

———————————

Submitted: April 14, 2016
Filed: August 18, 2016

———————————

Before GRUENDER, BRIGHT, and KELLY, Circuit Judges.

———————————

KELLY, Circuit Judge.

Cutter Morning Star School District, Fountain Lake School District, Jessieville School District, Lake Hamilton School District, and Mountain Pine School District (the school districts) sought termination of the Garland County School Desegregation Case Comprehensive Settlement Agreement (the Agreement) and relief from the district court's 1992 order enforcing it. The district court[1] denied their Rule 60(b)(5) motion. The school districts appeal, alleging the district court applied the wrong legal standard in analyzing their motion, and arguing that it is no longer just or equitable to give the 1992 order or the Agreement prospective application in light of the repeal of the Arkansas School Choice Act of 1989 (School Choice Act). See Ark. Code Ann. § 6-18-206 (repealed 2013). We have jurisdiction pursuant to 28 U.S.C. § 1291.

———————————

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

Because the repeal of the School Choice Act does not warrant termination of the Agreement, we affirm.

## I. Background

On August 18, 1989, W.T. Davis filed, individually and on behalf of a class of taxpayers of Garland County, Arkansas, a class action lawsuit against Garland County alleging that it maintained a racially-segregated public school system in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. The parties agreed to settle the case and entered into the Agreement on November 25, 1991. One provision of the overall Agreement adopted the School Choice Act, which allowed students to apply to attend a school outside of their resident school district, but included a race-based limitation on such transfers. After a fairness hearing, the court entered an order on April 28, 1992, approving the Agreement and dismissing the case with prejudice on the merits.

In 2012, the district court, as a result of independent litigation, held the provision of the School Choice Act limiting transfers on the basis of race violated the Equal Protection Clause of the Fourteenth Amendment. Teague ex rel. T.T. v. Ark. Bd. of Educ., 873 F. Supp. 2d 1055, 1065–68 (W.D. Ark. 2012), vacated as moot sub nom. Teague v. Cooper, 720 F.3d 973 (8th Cir. 2013).

The court's decision was appealed but eventually rendered moot because, in 2013, the Arkansas legislature repealed the 1989 Act and replaced it with the Arkansas Public School Choice Act of 2013 (2013 School Choice Act). See Ark. Code Ann. § 6-18-1901 et seq. The 2013 School Choice Act removed the race-based limitation on public school transfers and included a provision preventing the receiving school district from discriminating on the basis of race. The Act included, however, a carve-out restriction: Under the 2013 School Choice Act, nonresident transfers were only permitted "provided that the transfer by the student does not conflict with an

enforceable judicial decree or court order remedying the effects of past racial segregation in the school district." Ark. Code Ann. § 6-18-1901(b)(3).

The school districts wanted to know whether the changes to the state law had any effect on their continuing obligations under the Agreement, and on May 22, 2013, filed a petition for declaratory relief seeking continued enforcement of the Agreement. The school districts affirmatively argued that the Teague ruling, as well as the 2013 School Choice Act, did not have any impact on the efficacy of the court's 1992 order approving the Agreement and its inclusion of the race-based transfer limitation. The school districts explained that:

> The import [of entering the settlement agreement and obtaining Court approval thereof] was to incorporate by reference the language, terms and provisions of the 1989 Act as a consent desegregation plan of the Court applicable to all public school districts within Garland County, Arkansas, for the purpose of remedy[ing] the vestiges of prior *de jure* racial segregation within the public education system of Garland County, Arkansas.

The school districts expressed the view that because the Agreement constituted a court order remedying the effects of past discrimination (in other words, a consent decree), it fell within the 2013 School Choice Act's carve-out restriction. The district court agreed with the school districts' assessment that none of the changes in the law had impacted the Settlement, and granted their requested declaratory relief. The district court stated that "the Settlement Agreement constitutes a court-approved desegregation plan that should remain in effect despite recent changes to the law on which the Settlement Agreement was partly based." Davis v. Hot Springs Sch. Dist., et. al., No. 6:89-CV-06088, slip op. at 4 (W.D. Ark. June 10, 2013).

Now, however, the same school districts have taken a different position, explaining that they requested declaratory relief in order to clarify the law during an

emergency, but they had "no time" to seek termination of the Agreement in court. While the type of relief requested may have been affected by timing, the districts state that their position on the issue changed because of subsequent events. According to the districts, "[t]he episode that awoke the Districts to the inequity of the Settlement Agreement was the injustice that befell the Walker children, who were denied transfer solely because they are black." Therefore, on August 25, 2014, the districts filed the present motion for relief from judgment under Rule 60(b)(5), seeking termination of the Agreement and relief from the court's 1992 order in its entirety, on the grounds that it is no longer just or equitable to give the 1992 order or the Agreement prospective application in light of the repeal of the 1989 Act. The district court concluded that the school districts had failed to meet the standard for termination under Rule 60(b)(5) and denied their motion. The school districts timely appeal.

## II. Discussion

Federal Rule of Civil Procedure 60(b)(5) allows the court, "[o]n motion and just terms," to "relieve a party or its legal representative from a final judgment, order, or proceeding" because "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The parties dispute the correct standard to apply to the Rule 60(b)(5) motion at issue. The district court held, and the appellees maintain, that in order to terminate the Agreement, the moving party must demonstrate "full compliance," because the "'core of the termination standard' is whether 'the vestiges of past discrimination ha[ve] been eliminated to the extent practicable.'" Davis v. Hot Springs Sch. Dist., et al., No. 6:89-CV-06088, slip op. at 5 (W.D. Ark. March 31, 2015) (quoting Smith v. Bd. of Educ. of Palestine-Wheatley Sch. Dist., 769 F.3d 566, 572 (8th Cir. 2014) (alteration in original) (explaining the test for termination of a desegregation decree set forth in Freeman v. Pitts, 503 U.S. 467, 490–91 (1992))). The district court distinguished between

attempts to modify a settlement agreement and attempts at total termination, regardless of the basis for the motion.

By contrast, the school districts argue that their Rule 60(b)(5) motion should be governed by the standard set forth in <u>Rufo v. Inmates of Suffolk County Jail</u>, which requires a party seeking modification of a consent decree to establish "that a significant change in circumstances warrants revision." 502 U.S. 367, 383 (1992). The school districts allege that the relevant distinction is not one between modification and termination, but rather whether the basis for the request is changed circumstances or evidence of full compliance. If the modification or termination is based on a change of circumstances, they argue, the <u>Rufo</u> standard should apply. "If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." <u>Id.</u>

We review the appropriate legal standard de novo and the district court's Rule 60(b)(5) ruling for abuse of discretion. <u>Smith</u>, 769 F.3d at 568. We agree with the district court that the school districts have not shown evidence of full compliance.[2] Still, assuming without deciding that <u>Rufo</u> is the correct standard to apply in this situation, we conclude that the change in the law presented by the school districts, standing alone, is not enough to require termination of the Agreement in this case.

The school districts argue that even if they have not demonstrated full compliance with the Agreement, their termination motion should be granted based on

_____

[2]The school districts concede that they are not arguing "the judgment in this case has been satisfied, released, or discharged." The district court provided the school districts with the opportunity to present any evidence they deemed appropriate, but they did not submit "any evidence to demonstrate full compliance with the Agreement" or offer "any proof that the vestiges of past discrimination have been eliminated," and the Hot Springs School District (defendant-appellee here) provided evidence that the Garland County school districts remain racially identifiable.

a change in circumstances, namely, a change in the law.   While a change in the law may lead to a successful Rule 60(b)(5) motion, see, e.g., Protectoseal Co. v. Barancik, 23 F.3d 1184, 1187 (7th Cir. 1994), and Rufo may apply in certain instances to school desegregation decrees, see Smith, 769 F.3d at 571–72, the movants still retain the burden to show that the change in the law has an actual effect on the section of the consent decree targeted, making future application inequitable, and that any such effect warrants termination of the entire Agreement. The school districts have done neither.

First, the school districts have failed to show that any change in the law affects their consent decree.  The 2013 School Choice Act has a clear carve-out for school districts subject to an "enforceable judicial decree or court order remedying the effects of past racial segregation in the school district."  Ark. Code Ann. § 6-18-1901(b)(3). The school districts present only a 2012 federal district court decision, subsequently rendered moot by a change in the law, to show that application of the old School Choice Act is prospectively inequitable.  See Teague, 873 F. Supp. 2d at 1065–66. Even if the case had not been rendered moot, however, they have failed to show why it would matter.  While "[a] consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law," there has been no ruling that the 1989 Act is unconstitutional as incorporated into a judicial decree remedying the effects of past discrimination,  and the school districts have not demonstrated why the reasoning that drove the district court's decision in Teague would render it impermissible for individual school districts to implement in the context of a consent decree the practices outlined by the 1989 Act. Rufo, 502 U.S. at 388.  To the contrary, Teague's finding that the 1989 Act was unconstitutional rested on the fact that "[t]he limitation expressed in Ark. Code Ann. § 6-18-206(f) [the race-based transfer limitation] applie[d] state-wide without regard to whether a resident or non-resident school district ha[d] a history of de jure or de facto segregation." Teague, 873 F. Supp. 2d at 1066.

Second, even assuming a relevant change in the law, the school districts—who asked for full termination of the Agreement—must show that the purported change affects the entire Agreement. In Smith, on which the school districts primarily rely, "the [district] court's finding 'that the defendants [had] complied in good faith with the remainder of the requirements set forth in the consent decree'" was relevant both to whether there was a "sufficient basis for the court to conclude that the District had demonstrated the requisite 'significant change of circumstances,'" and to whether the modification effectively terminated the entire decree. 769 F.3d at 573–74. Some provisions of the decree were effectively terminated by the court's order granting the school district's Rule 60(b)(5) motion, yet other provisions remained unaffected. Since extending the school district's motion to terminate those other provisions would be "supported by nothing more than the notion they are 'no longer convenient to live with,'" we were confident that "the district court did not intend that its order terminate the entire consent decree." Id. at 574 (quoting Rufo, 502 U.S. at 383).

Here, the school districts' motion to terminate the entire Agreement is similarly overbroad, and a change of law that may or may not apply to one section of that Agreement is not sufficient to carry their burden. The district court noted in its 2013 order granting declaratory relief that the Agreement consists of much more

> than the mere implementation of the 1989 Act. It is a contract that also addresses the districts' staff development, curricula, testing and assessments, special education and gifted-and-talented programs, student-teacher interactions, and other services designed to enhance and improve public education in Garland County.

Davis, No. 6:89-CV-06088, slip op. at 4. The school districts have presented no evidence that they have either fully complied or that there have been changed circumstances in those other areas of the Agreement. Termination of the entire Agreement would therefore be "supported by nothing more than the notion [it is] 'no longer convenient to live with.'" Smith, 769 F.3d at 574. The "proposed

modification" of total termination is therefore not "suitably tailored to the changed circumstances" alleged here, and the school districts' motion fails under a changed circumstances standard. Id. (quoting Rufo, 502 U.S. at 383).[3]

### III. Conclusion

We affirm the judgment of the district court.

_____

---

[3]The school districts rely entirely on a change in law to support termination of the Agreement. Thus, while a change in facts may also support a Rule 60(b)(5) motion, there is nothing in the record to support a conclusion that any change in factual circumstances would justify termination of the Agreement in this case. See id. at 572 ("Rufo and its progeny grant federal courts of equity substantial flexibility to adapt their decrees to changes in the facts or law . . . .").